The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Bost and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. Plaintiff suffered a compensable injury by accident on June 11, 1992.
3. At the time of the injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and there was an employer-employee relationship between the parties with defendant-employer being insured by Cigna Insurance Company.
4. At the time of injury, plaintiff's average weekly wage was $210.00.
5. Industrial Commission Form 21 was approved by the Industrial Commission on October 21, 1993.
6. Industrial Commission Form 24 was approved by the Industrial Commission on December 7, 1993.
7. Cigna Insurance Company has paid temporary total disability benefits to plaintiff at her weekly compensation rate of $140.00 from June 19, 1992 to December 17, 1993.
8. Following the hearing, the parties stipulated into evidence a set of health care records, including:
a. Medical records of Scott J. Spillman, M.D.;
b. Medical records of James T. Hodges, M.D.;
c. Health care records of Alamance Mental Health Program;
d. Medical records of Bob Rollins, M.D., P.A.;
e. Medical records of Mebane Medical Center;
f. Medical records of Dr. Applington; and
g. Medical records of UNC Hospital.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was twenty-eight years of age, and married with two children.
2. Plaintiff did not complete high school, having only finished the eleventh grade. However, she did fill out a job application for defendant-employer in which she stated that she had completed the twelfth grade and had received a high school diploma. Plaintiff admitted that she had falsely represented that she had obtained a high school diploma because it sounded better.
3. Plaintiff began working for defendant or about April, 1992. Her employment was as inspector-folder, which she generally continued doing until the date of her alleged injury.
4. On June 11, 1992, while at work. Plaintiff lifted a heavy box of folding papers from her work table to the floor and suffered an injury to her back, shoulders and left arm. Prior to this incident, she had no history of back problems and was able to perform her work duties.
5. Plaintiff sustained an injury by accident arising out of and in the course of her employment on June 11, 1992. The fact that she lifted a heavy box from her work table was an unusual occurrence which interrupted her regular work routine. She was on her employer's premises at the time of her injury.
6. After initially seeing Dr. Jones at the Mebane Clinic, plaintiff was referred to Dr. J. Thomas Hodges, an orthopedic physician, for care. Dr. Hodges' diagnosis was a strained cervical spine and myositis, from his symptomatic findings of tenderness about plaintiff's cervical spine, neck and both shoulders, although plaintiff complained primarily of her neck area and the left shoulder and left upper extremity.
7. In June, 1992, Dr. Hodges started treating plaintiff to get her symptoms under control, by prescribing a course of medication for pain and an anti-inflammatory agent. He continued treating plaintiff at the time of the initial hearing. It is now Dr. Hodges' medical opinion that plaintiff has sequentially gone from myositis to chronic pain or fibromyalgia and that such condition has evolved into the chronic pain category so as to preclude plaintiff from any gainful employment to earn income of any kind. This situation has existed from the date of injury to and including the present.
8. Plaintiff's employment with defendant was terminated on or about June, 1993, and her Worker's Compensation benefits were terminated on or about December 16, 1993.
9. Dr. Hodges' opinion is such that as a result of plaintiff's injury, she has not been able to function in any capacity without pain and that her chronic pain continues today. Before the date of injury, plaintiff was able to function as wife and mother, while holding down a full-time job with defendant, without any physical difficulties whatsoever. Plaintiff has not been able to do any of these things since her injury, because of the chronic pain.
10. Plaintiff was examined by Dr. Applington on September 25, 1992 for an independent medical examination. On October 7, 1992, Dr. Applington stated that he could find nothing significant going on with plaintiff, and he also stated that plaintiff appeared to be engaging in symptom magnification. He further stated that there is no reason that plaintiff cannot be working, and that he did not see any need for further treatment.
11. On May 24, 1993, plaintiff was examined by Dr. Spillman, who specializes in occupational medicine. Dr. Spillman noted that the x-ray and MRI of plaintiff's lumbar spine and cervical spine failed to reveal any surgical lesion. Dr. Spillman found little evidence to support a diagnosis of myofascial pain, and he stated that all work-up failed to provide findings to fully explain plaintiff's pain perception. Upon Dr. Spillman's recommendation, a functional capacity evaluation was performed, which confirmed Dr. Spillman's belief that plaintiff engaged in symptom magnification. Dr. Spillman determined that plaintiff was at maximum medical improvement, with a zero percent permanent partial impairment rating. He released plaintiff to return to full, unrestricted work.
12. On or about June 22, 1993, plaintiff was referred by Dr. Hodges to Alamance-Caswell Area Mental Health for support with her chronic pain and resulting depression. She was seen by Dr. Sean Stetson, psychiatrist, who started her on a course of psychotherapy and medications. He gave a concurring diagnosis to Dr. Hodges of chronic back pain and depression. Plaintiff has primarily worked with Kim Raglan, MA, Social Worker III, for counseling support, and with Dr. Wojdynska, who took responsibility for plaintiff's care from Dr. Stetson. Plaintiff continues with the Alamance-Caswell Area Mental Health program on an as-needed basis.
13. Dr. Hodges has never informed plaintiff that she can return to work or be gainfully employed to earn any income and has not released plaintiff from his care, since in his opinion the plaintiff has not as yet reached maximum medical improvement (MMI) — notwithstanding Dr. Spillman's report, which Dr. Hodges has reviewed and with which he disagrees. The undersigned give greater weight to the medical opinions of Dr. Hodges, plaintiff's treating physician.
14. As a result of her injury by accident and the resulting chronic pain, plaintiff was unable to complete work on June 11, 1992, and remains unable to work through the present time. She has not reached maximum medical improvement. Since her date of injury by accident, plaintiff has been unable or incapable of earning any wages. Defendants paid compensation to plaintiff until December 16, 1993, and then terminated her benefits upon approval of the Form 24 by the Commission.
15. Plaintiff has not yet received a disability rating to her back from Dr. Hodges as a result of the injury by accident giving rise to this claim.
16. Dr. Hodges and Dr. Spillman agree that the muscle strain in plaintiff's back that occurred as a result of the work-related accident has fully resolved.
17. Plaintiff has not returned to work since June 11, 1992. Other than looking in the newspaper for job opportunities, plaintiff has done nothing else to look for a job since June 11, 1992.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of her compensable injury on June 11, 1992, and the resulting chronic pain, plaintiff is entitled to temporary total disability compensation at the rate of $140.00 per week, from June 11, 1992 and continuing until she is able to resume work or further orders of the Commission. N.C. Gen. Stat. § 97-29.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable injury on June 11, 1992, and the resulting chronic pain, including possible treatment at a pain management program. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. For her temporary total disability compensation, defendants shall pay temporary total disability compensation to plaintiff at the rate of $140.00 per week, for the period from June 11, 1992 and continuing until she is able to resume work or further orders of the Commission. Defendants, however, are entitled to a deduction for the amount of compensation paid to plaintiff through December 16, 1997. Compensation which has accrued shall be paid to plaintiff in a lump sum, subject to an attorney fee approved in Paragraph 3.
2. Defendants shall pay all medical expenses, incurred or to be incurred by plaintiff as a result of her compensable injury on June 11, 1992, and the resulting chronic pain syndrome when bills for the same shall have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedure. The authorized medical expenses shall include a pain management program if recommended by a treating physician.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be paid directly to plaintiff's counsel.
 ORDER
1. In the event that defendants offer vocational rehabilitation to plaintiff, she is hereby ORDERED to cooperate with said program. Any refusal to comply with rehabilitation efforts shall bar plaintiff from further compensation until such refusal ceases, pursuant to N.C. Gen. Stat. § 97-25.
2. Defendants shall pay the costs.
 S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ______________ DIANNE C. SELLERS COMMISSIONER
LKM/bjp